1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10  ANTHONY J. SMITH,

11          Plaintiff,

12      v.

13  K. SANTORO, et al.,

14          Defendants.

15

16

17

| | |
|---|---|
| | Case No. 1:21-cv-01329-JLT-SAB (PC) |
| | FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF |
| | (ECF No. 28) |

18      Plaintiff Anthony J. Smith is proceeding pro se in this civil rights action filed pursuant to

19  42 U.S.C. § 1983.

20                                      **I.**

21                              **BACKGROUND**

22      On June 1, 2022, Findings and Recommendations were issued to dismiss the instant

23  action for failure to state a claim, failure to comply with a court order, and failure to prosecute.

24  (ECF No. 21.) No objections were filed and the time to do so passed.

25      On July 11, 2022, the Findings and Recommendations in full, and the case was dismissed

26  for failure to state a cognizable claim for relief, failure to comply with a court order, and failure

27  to prosecute. (ECF No. 24.) Judgment was entered the same day.

28  ///

1

1    On the same day, Plaintiff filed a request for extension of time to file objections, in which

2    he contended that there was no access to the law library due to an outbreak of the COVID-19

3    virus. (ECF No. 26.) Thereafter, the Court granted Plaintiff an additional fourteen days to file

4    objections to the findings and recommendations. (ECF No. 27.)

5    Instead of filing objections, Plaintiff lodged a first amended complaint without leave of

6    court. (ECF No. 28.)

7    On August 19, 2022, the District Judge set aside the judgment, reopened the case, and

8    remanded the first amended complaint for screening purposes. (ECF No. 29.)

9    **II.**

10    **SCREENING REQUIREMENT**

11    The Court is required to screen complaints brought by prisoners seeking relief against a

12    governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

13    The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

14    legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or

15    that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. §

16    1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

17    A complaint must contain "a short and plain statement of the claim showing that the

18    pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

19    required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

20    conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

21    Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate

22    that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v.

23    Williams, 297 F.3d 930, 934 (9th Cir. 2002).

24    Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings

25    liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d

26    1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be

27    facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer

28    that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss

1 v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant

2 has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's

3 liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572

4 F.3d at 969.

**III.**

**SUMMARY OF ALLEGATIONS**

7    The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of

8 the screening requirement under 28 U.S.C. § 1915.

9    On December 23, 2020, Warden Kelly Santoro and Chief Medical Executive N. Odelugu

10 set a plan in place to combat COVID-19 at North Kern State Prison by placing the prison on

11 lockdown after a number of staff members tested positive.

12    On December 31, 2020, all inmates who tested positive for COVID-10 were moved out

13 of Building One to another yard and placed in quarantine.  The remaining inmates were also

14 placed on quarantine and were tested weekly.  However, after twenty-one days of quarantine,

15 correctional officers at the directed of Warden Santoro forced non-infected inmates to move

16 from Building One to Building Three where they had just been an outbreak.  The inmates were

17 not given any products to disinfect the cells and the cells were not cleaned.  Plaintiff had to make

18 his own homemade disinfectant.

19    On January 20, 2021, Plaintiff filed a grievance but he "was met with only excuses as to

20 how he was safe wit this process."

21    On February 11, 2021, after another twenty-one days of quarantine, officers Montoya,

22 Diaz, Gallardo, and Martinez (as well as other unknown) threatened to extract Plaintiff from his

23 cell if he did not move to another infected building and cell.  Despite Plaintiff's protest, he was

24 eventually moved to Building Four where other inmates tested positive and was once again

25 placed in quarantine even though Plaintiff had not tested positive and had no symptoms.

26 Plaintiff refused to eat off any the trays of food brought to his cell for fear of contracting the

27 virus.  One or two of the inmates passing out the food trays tested positive.

28    In all, Plaintiff was kept on quarantine for forty-six days and all staff knew or should

1 have known that moving inmates in this manner caused a risk to Plaintiff's health and safety.  N.

2 Odelugu should have known the danger and at least made an effort to corrected the flawed

3 process.

4       Plaintiff seeks punitive and compensatory damages.

5 **IV.**

6 **DISCUSSION**

7 **A.**     **Exposure to COVID-19**

8       "[A] prison official cannot be found liable under the Eighth Amendment for denying an

9 inmate humane conditions of confinement unless the official knows of and disregards an

10 excessive risk to inmate health or safety; the official must both be aware of facts from which the

11 inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

12 inference....The Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws

13 cruel and unusual 'punishments.' " <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Further, in

14 situations where the challenged "conduct is harmful enough to satisfy the objective component

15 of an Eighth Amendment claim, whether it can be characterized as 'wanton' depends upon the

16 constraints facing the *official*." <u>Wilson v. Seiter</u>, 501 U.S. 294, 303 (1991) (citations omitted)

17 (original emphasis).  Because "only the unnecessary and wanton infliction of pain implicates the

18 Eighth Amendment," the evidence must show the defendant acted with a "sufficiently culpable

19 state of mind." <u>Id.</u> at 297 (internal quotation marks, emphasis and citations omitted).

20       When a "plaintiff names wardens [or other supervisory personnel] as defendants, plaintiff

21 must specifically allege the warden's personal involvement in the constitutional deprivation or a

22 causal connection between the defendant's wrongful conduct and the alleged constitutional

23 deprivation." <u>Stephen v. Tilestone</u>, No. 2:20-cv-1841 KJN P, 2021 WL 289379 at *6, (E.D. Cal.

24 Jan. 28, 2021). This is because "wardens [and other supervisory personnel[] re not liable based

25 solely on their role in supervising prisons." <u>Id.</u>  Because vicarious liability does not apply to

26 Section 1983 suits, "a plaintiff must plead that each Government-official defendant, through the

27 official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676. "A

28 defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her

1    personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

2    between the supervisor's wrongful conduct and the constitutional violation.' " Starr v. Baca, 652

3    F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

4    "The requisite causal connection can be established ... by setting in motion a series of acts by

5    others, ... or by knowingly refus[ing] to terminate a series of acts by others, which [the

6    supervisor] knew or reasonably should have known would cause others to inflict a constitutional

7    injury," Id. at 1207–08 (alteration in original) (internal quotation marks and citation omitted).

8    "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct,

9    '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in

10   the training, supervision, or control of his subordinates; for his acquiescence in the constitutional

11   deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

12   " Keates v. Koile, 883 F.3d 1228, 1243 (9th Cir. 2018) (alteration in original) (quoting Starr, 652

13   F.3d at 1208).

14       The Court acknowledges COVID-19 poses a substantial risk of serious harm. See Plata v.

15   Newsom, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that

16   [COVID-19] poses a substantial risk of serious harm" to prisoners.). However, in order to state a

17   cognizable Eighth Amendment claim, Plaintiff must provide more than generalized allegations

18   that they have not done enough to control the spread. See Booth v. Newsom, No. 2:20-cv-1562

19   AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); Blackwell v. Covello, No. 2:20-CV-

20   1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against

21   warden for failure to adequately control the spread of COVID-19 in the prison).  That is, Plaintiff

22   must provide more than generalized allegations that Defendants have not done enough to enforce

23   six-feet social and living distancing, provide sufficient cleaning supplies, or enforce the mask

24   requirement, in order to control the spread of COVID-19. See, e.g., Sanford v. Eaton, No. 1:20-

25   cv-00792-BAM (PC), 2021 WL 1172911, at *6 (E.D. Cal. Mar. 29, 2021) (explaining that "in

26   order to state a cognizable Eighth Amendment claim against the warden, associate wardens and

27   the other defendants named, Plaintiff must provide more than generalized allegations that the

28   warden, associate wardens and other defendants have not done enough regarding overcrowding

1    to control the spread" of COVID-19); <u>Blackwell</u>, 2021 WL 915670, at *3 (concluding that "in

2    order to state a cognizable Eighth Amendment claim against the warden plaintiff must provide

3    more than generalized allegations that the warden has not done enough to control the spread" of

4    COVID-19).  Plaintiff fails to allege facts showing how any individual was responsible for such

5    failings, or allege a causal link between each Defendant and the claimed constitutional violation.

6    <u>See, e.g.</u>, <u>Cedillos v. Youngblood</u>, No. 1:21-cv-00138-DAD-BAM (PC), 2021 WL 2534534, at

7    *3 (E.D. Cal. June 21, 2021) (concluding that prisoner failed to state Section 1983 claims due to

8    allegations of "failings in social distancing and unclean cells and showers" during COVID-19

9    pandemic, where plaintiff failed to allege causal link between defendants and violations);

10    <u>Stephen v. Tilestone</u>, 2021 WL 289379, at *6 (concluding that plaintiff failed to allege Eighth

11    Amendment violation for prison transfer that purportedly put him at extreme risk of contracting

12    COVID-19 because he did not allege facts showing how any particular defendant violated his

13    rights).

14          Here, Plaintiff fails to allege how COVID-19 presents a high risk to him due to any

15    specific individual risk factors to satisfy the objective prong of an Eighth Amendment violation.

16    Further, the subjective prong of an Eighth Amendment claim has not been pled adequately.

17    Plaintiff's concerns over the risk of contracting COVID-19 are not insignificant, but this risk is

18    not unique to prisoners. This is a global pandemic, effecting millions of individuals worldwide.

19    However, Plaintiff makes only general allegations regarding the prison with respect to the

20    managing of inmates during the pandemic.  Although Plaintiff contends that he was moved to

21    from Building One to Buildings Three and Four, he notes that he was placed on quarantine

22    therein.  There are insufficient factual allegations in the complaint which plausibly suggest that

23    either Defendant received, reviewed, and actually drew an inference Plaintiff faced a substantial

24    risk to his safety.  <u>See e.g.</u>, <u>May v. Williams</u>, 10cv576-GMN-LRL, 2012 WL 1155390, at *3 (D.

25    Nev. Apr. 4, 2012) ("Holding a prison official personally responsible for damages simply

26    because he is familiar with a prisoner's circumstances through direct communications with the

27    prisoner and through communications with his subordinates is such a broad theory of liability

28    that it is inconsistent with the personal responsibility requirement for assessing damages against

1   public officials in a 42 U.S.C. § 1983 suit."); Starr v. Baca, 652 F.3d at 1216 ("First, to be

2   entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply

3   recite the elements of a cause of action, but must contain sufficient allegations of underlying

4   facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the

5   factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that

6   it is not unfair to require the opposing party to be subjected to the expense of discovery and

7   continued litigation.")

8       In addition, Plaintiff fails to allege facts sufficient to show that each named Defendant

9   was subjectively aware that *Plaintiff*, rather than the inmate population at large, was facing an

10  objectively serious and excessive risk to his health and safety and that each Defendant failed to

11  take reasonable steps to abate that risk.  Plaintiff acknowledges that staff at North Kern State

12  Prison devised a plan to combat the spread of COVID-19.  However, Plaintiff challenges his

13  subsequent transfer to different housings units and placement in quarantine.  While the actions of

14  Defendant may not have been effective or a "perfect response," Plaintiff does not adequately

15  allege that Defendants were deliberately indifferent to the spread of the disease. The efforts

16  undertaken demonstrate that Defendants engaged in active conduct to manage the spread of the

17  virus. Even if the response at NKSP has been inadequate, it has not disregarded a known risk or

18  failed to take any steps to address the risk. Wilson v. Williams, 961 F.3d 829, 843 (6th Cir.

19  2020); Sanford v. Eaton, 2021 WL 3021447, at *8 (failure to state a claim where defendants

20  were trying "alternatives" to manage the situation.)  Plaintiff's conclusory allegations that

21  Defendants "knew or should of known" of the flawed process is insufficient.  To this end, the

22  Court finds Plaintiff's concerns to be valid, but the factual allegations in the first amended

23  complaint do not demonstrate Defendants disregarded the risk Plaintiff faced.  Indeed, there are

24  no allegations that Plaintiff even contracted COVID-19 as a result of the Defendants actions or

25  inactions.  Further, the fact that Plaintiff was placed in quarantine for forty-six days demonstrates

26  that Defendants were acting to protect him from the COVID-19 virus.  Accordingly, Plaintiff

27  fails to state a cognizable claim for relief.

28  ///

7

**B.      Further Leave to Amend**

The Court will recommend that Plaintiff's first amended complaint be dismissed without leave to amend because he was previously notified of the deficiencies and has failed to correct them. A plaintiff's "repeated failure to cure deficiencies" constitutes "a strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to amend would be futile[.]" See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (internal citations and quotation marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations—none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in the complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), amended by 234 F.3d 428, overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. 40 Cnty. Of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

Where a "plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to his claims, the district court's discretion to deny leave to amend is particularly broad." Zucco, 552 F.3d at 1007 (quotations and citations omitted).  In light of Plaintiff's failure to provide additional information about his claims despite specific instructions from the court, the Court finds that further leave to amend would be futile and the third amended complaint should be dismissed without leave to amend. Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").  Accordingly, the Court will recommend that the third amended complaint be dismissed without leave to amend.

## V.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that the instant action be dismissed for failure to state a cognizable claim for relief without further leave to amend.

1    This Findings and Recommendation will be submitted to the United States District Judge

2   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14)**

3   days after being served with this Findings and Recommendation, Plaintiff may file written

4   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

5   Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

6   specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834,

7   838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

8

9   IT IS SO ORDERED.

10  Dated:  __**August 29, 2022**__

UNITED STATES MAGISTRATE JUDGE